1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9               NORTHERN DISTRICT OF CALIFORNIA

10                    San Francisco Division

11   CATHERINE FRANEY,                    Case No. 22-cv-03457-LB

12              Plaintiff,

13        v.                             **ORDER DENYING MOTION TO
                                         DISMISS OR TRANSFER**
14   AMERICAN BATTERY SOLUTIONS
     INC., et al.,                        Re: ECF No. 11
15
              Defendants.
16

17                         **INTRODUCTION**

18        The plaintiff worked for defendant Subhash Dhar, the CEO of defendant American Battery

19   Solutions, Inc. (ABS). She claims that Mr. Dhar sexually harassed her and created a hostile work

20   environment and that ABS allowed the harassment to occur and retaliated against her when she

21   resisted Mr. Dhar's advances.[1] The defendants are Michigan citizens.[2] The plaintiff worked for

22   ABS in Michigan starting in January 2019, but she moved to San Francisco in April 2020, where

23   she has lived since. ABS fired her in May 2022.[3] The defendants moved to dismiss for lack of

24

25

26   ───────────────
     [1] Compl. – ECF No. 1. Citations refer to material in the Electronic Case File (ECF); pinpoint citations
        are to the ECF-generated page numbers at the top of documents

27   [2] Mot. – ECF No. 11-1 at 7.

28   [3] Compl. – ECF No. 1 at 14, 17 (¶¶ 54, 65).

personal jurisdiction under Rule 12(b)(2).[4] They also seek dismissal or transfer for improper venue under Rule 12(b)(3) or, alternatively, transfer under 28 U.S.C. § 1404(a).[5]

The court denies the motion. The court has specific personal jurisdiction over the defendants because they availed themselves of the California forum by (1) employing the plaintiff and another person in California, (2) allegedly retaliating against the plaintiff in California, (3) identifying a Los Angeles location on ABS's website, and (4) pursuing business opportunities in California. They also purposefully aimed their acts at the forum and caused harm here. Venue is appropriate in this district because the plaintiff was employed here. Transfer is inappropriate because the defendants have not shown the forum-selection clause they rely on is valid and because the factors governing transfer under 28 U.S.C. § 1404(a) do not weigh in favor of transfer.

## STATEMENT

Defendant Mr. Dhar is a Michigan citizen and defendant ABS is a Delaware corporation with its principal place of business in Michigan.[6] Mr. Dhar is the founder and CEO of ABS.[7] In January 2019, Mr. Dhar hired the plaintiff to work at ABS, in Michigan.[8] The plaintiff lived and worked in Michigan until she moved to California in April 2020.[9]

When the plaintiff began working at ABS in 2019, her job title was "Chief of Staff" to Mr. Dhar.[10] Mr. Dhar allegedly pursued a sexual relationship with her by lavishing her with praise, gifts, professional responsibilities, and the prospect of career support and advancement.[11] For example, Mr. Dhar suggested that she could become Chief Administrative Officer in five years

---

[4] Mot. – ECF No. 11-1 at 7.

[5] *Id.*

[6] *Id.*; Compl. – ECF No. 1 at 2–3 (¶¶ 5–6).

[7] Compl. – ECF No. 1 at 2 (¶ 1).

[8] *Id.* at 3 (¶ 11).

[9] *Id.* at 14 (¶ 54); Opp'n – ECF No. 16 at 17.

[10] Compl. – ECF No. 1 at 3 (¶ 11).

[11] *Id.* at 4–8 (¶¶ 12–30).

United States District Court
Northern District of California

and Chief Operating Officer or Chief Executive Officer in eight.[12] In March 2019, he gave her an "intimate hug and told her that he loved her."[13] And in April 2019, the day of the plaintiff's wedding anniversary, Mr. Dhar directed her to "use his personal credit card to 'pay for whatever she wanted that day.'"[14]

Mr. Dhar's advances culminated in an uninvited and unwanted intimate kiss in June 2019.[15] After the incident, the plaintiff tried to rebuff Mr. Dhar by (1) not responding to a text message inviting her to attend a meeting with the "executive teams from ABS and Bosch," (2) declining an invitation to attend a party at his home, and (3) staying out of direct communication with Mr. Dhar and "offline a good deal during her vacation" to Norway in June 2019.[16] Then Mr. Dhar's previous praise and support stopped.[17] For example, in late July and August 2019, he (1) ignored her text messages (after previously having a daily correspondence), (2) uninvited her from the closing of "the Bosch Springboro acquisition" and a "Technical Advisory Board meeting," (3) told her their relationship needed to change, and (4) moved her office away from his.[18]

In November 2019, Mr. Dhar allegedly prevented the plaintiff from transferring to the business-development department at ABS. [19] In February 2020, he demoted her from "Chief of Staff" to the "Director of HR."[20] The plaintiff moved in April 2020 to California to follow her husband but continued working for ABS.[21] ABS furnished her workspace with computer equipment, provided health insurance, and paid her phone bill and airline travel expenses.[22] In

---

[12] *Id.* at 4 (¶ 12).

[13] *Id.* at 5 (¶ 16).

[14] *Id.* at 6 (¶ 19).

[15] *Id.* at 9 (¶ 33).

[16] *Id.* at 9–11 (¶¶ 36, 39, 42).

[17] *Id.* at 11–12 (¶ 44).

[18] *Id.* at 12–14 (¶¶ 45–49).

[19] *Id.* at 13–14 (¶ 51).

[20] *Id.* at 14 (¶ 52).

[21] *Id.* at 14 (¶ 54)

[22] Franey Decl. – ECF No. 16-2 at 2 (¶ 4).

August 2020, Mr. Dhar overruled an internal recommendation to promote the plaintiff to a Product Manager position in ABS's business-development department.[23] For the rest of 2020 and into 2021, Mr. Dhar continued to prevent the plaintiff from transferring to the business-development department and passed her over for a potential promotion to Vice President of HR by conducting an external-only search for the position.[24]

After ABS hired a new Vice President of HR in February 2021, it announced that the plaintiff would be transferred to the business-development team.[25] The plaintiff's start date initially was May 1, 2022.[26] ABS pushed the start date back several times and then — based on Mr. Dhar's desire to avoid "any big organizational changes at that time with the current 'deal' in process" — reneged on the plan to transfer the plaintiff to the business-development team.[27] On May 19, 2022, ABS notified the plaintiff that it was terminating her employment.[28] After receiving her right-to-sue letter from the California Department of Fair Employment and Housing, the plaintiff filed the complaint in this case on June 10, 2022.[29]

The complaint has six claims for violations of state and federal laws: (1) Fair Employment and Housing Act (FEHA), Cal. Gov. Code § 12940 *et seq.* (hostile work environment) (against ABS and Mr. Dhar); (2) FEHA, Cal. Gov. Code § 12940(k) (failing to prevent sexual harassment) (against ABS); (3) FEHA, Cal. Gov. Code § 12940(h) (retaliation) (against ABS); (4) Title VII, 42 U.S.C. § 2000e-3(a) (retaliation) (against ABS); (5) Michigan's Elliott-Larsen Civil Rights Act (ELCRA) (quid pro quo and hostile work environment) (against ABS and Mr. Dhar); and (6) ELCRA (retaliation) (against ABS).[30] The defendants moved to dismiss or transfer the claims

---

[23] Compl. – ECF No. 1 at 15 (¶ 55)

[24] *Id.* at 15–16 (¶¶ 55–59).

[25] *Id.* at 16 (¶ 61).

[26] *Id.*

[27] *Id.* at 17 (¶ 64).

[28] *Id.* at 17 (¶ 65).

[29] *Id.* at 3 (¶ 10) (also filed a complaint with the EEOC and requested a right-to-sue notice.).

[30] *Id.* at 17–23 (¶¶ 67–113).

United States District Court
Northern District of California

1  based on the lack of personal jurisdiction and improper or inconvenient venue and a forum-
2  selection clause in the plaintiff's unsigned employment agreement.[31]

3  The parties consented to magistrate-judge jurisdiction under 28 U.S.C. § 636.[32] The court held
4  a hearing on August 25, 2022.

5  **STANDARDS**

6  **1.  Rule 12(b)(2) — Personal Jurisdiction**

7  "In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff
8  bears the burden of establishing that jurisdiction is proper." *Ranza v. Nike, Inc.*, 793 F.3d 1059,
9  1068 (9th Cir. 2015) (cleaned up). The parties may submit, and the court may consider,
10  declarations and other evidence outside the pleadings in determining whether it has personal
11  jurisdiction. *Doe v. Unocal Corp.*, 248 F.3d 915, 922 (9th Cir. 2001), *abrogated on other grounds*
12  *as recognized in Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1024 (9th Cir. 2001).

13  "Where, as here, the defendant's motion is based on written materials rather than an
14  evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to
15  withstand the motion to dismiss." *Ranza*, 793 F.3d at 1068 (cleaned up). "Uncontroverted
16  allegations must be taken as true, and conflicts between parties over statements contained in
17  affidavits must be resolved in the plaintiff's favor." *Id.* (cleaned up). But courts "may not assume
18  the truth of allegations in a pleading which are contradicted by affidavit[.]" *Mavrix Photo, Inc. v.*
19  *Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (cleaned up); *accord Ranza*, 793 F.3d at
20  1068 ("A plaintiff may not simply rest on the bare allegations of the complaint.") (cleaned up).

22  **2.  Rule 12(b)(3) — Venue**

23  "A civil action may be brought in — (1) a judicial district in which any defendant resides, if all
24  defendants are residents of the State in which the district is located; (2) a judicial district in which a
25  substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of

---

[31] Mot. – ECF No. 11-1.

[32] Consents – ECF Nos. 14, 15.

property that is the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b).

Under Rule 12(b)(3), a defendant may move to dismiss a case for improper venue. After a defendant challenges the venue, it is the plaintiff's burden to show that venue is proper. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). In the context of a Rule 12(b)(3) motion, the court need not accept as true all allegations in the complaint, but may consider facts outside the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). The court is, however, "obligated to draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Id.* at 1138.

If venue is improper, the court may either dismiss the case without prejudice, or, if it is in the "interest of justice," transfer the case "to any district or division in which it could have been brought." 28 U.S.C. § 1406(a); *In re Hall, Bayoutree Assocs., Ltd.*, 939 F.2d 802, 804 (9th Cir. 1991) (dismissal must be without prejudice). Ordinarily, the interest of justice requires transferring the case to the proper venue rather than dismissing the case. *Baeta v. Sonchik*, 273 F.3d 1261, 1264–65 (9th Cir. 2001).

### 3.   28 U.S.C. § 1404 — Transfer

Under 28 U.S.C. § 1404(a), the court has discretion to transfer the case to a different district where the action "might have been brought" (meaning, a district where venue also is proper) for the convenience of the parties and witnesses, in the interest of justice. 28 U.S.C. § 1404; *Walters v. Famous Transports, Inc.*, 488 F. Supp. 3d 930, 935 (N.D. Cal. 2020) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013)). Section 1404(a) and the *forum non conveniens* doctrine also "provide appropriate enforcement mechanisms" for forum-selection clauses. *Atl. Marine Constr.*, 571 U.S. at 61.

The moving party has the burden to show that transfer is appropriate under § 1404(a). *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). Nonetheless, the district court has broad discretion "to adjudicate motions for transfer according to an

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000) (quoting *Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). Although Congress drafted § 1404(a) in accordance with the doctrine of *forum non conveniens*, it was intended to be a revision to rather than a codification of the common law. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 253 (1981); *Norwood v. Kirkpatrick*, 349 U.S. 29, 32 (1955). Thus, a § 1404(a) transfer is available "upon a lesser showing of inconvenience" than that required for a *forum non conveniens* dismissal. *Norwood*, 349 U.S. at 32.

"When reviewing a § 1404(a) motion to transfer venue, a court may consider evidence outside of the pleadings but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party." *Fluence Energy, LLC v. M/V BBC FINLAND*, No. 3:21-cv-01239-BEN-JLB, 2022 WL 378197, at *5 (S.D. Cal. Feb. 8, 2022) (cleaned up); *see also Halcyon Syndicate Ltd., LLC v. Graham Beck Enterprises (PTY), Ltd.*, No. 19-cv-04278-JCS, 2020 WL 4051865, at *19 (N.D. Cal. July 20, 2020) ("[W]hen considering whether dismissal is appropriate under the doctrine of *forum non conveniens* the Court may look beyond the facts alleged in the complaint but must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party.").

## ANALYSIS

### 1. Personal Jurisdiction

Where there is no federal statute governing personal jurisdiction, the district court applies the law of the state where the district court sits. Fed. R. Civ. P. 4(k)(1)(A); *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998). "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,' [a court's] inquiry centers on whether exercising jurisdiction comports with due process." *Picot*, 780 F.3d at 1211 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014)); *see* Cal. Civ. Proc. Code § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States"); *Pebble Beach v. Caddy*, 453 F.3d 1151, 1154–55 (9th, Cir. 2005) (analyzing California and federal long-arm statutes). A court may exercise personal jurisdiction over a

defendant consistent with due process only if the defendant has "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

"There are two types of personal jurisdiction: general and specific." *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80 (2017). The plaintiff asserts only specific jurisdiction.[33]

"In order for a state court to exercise specific jurisdiction, the suit must arise out of or relate to the defendant's contacts with the forum." *Id.* at 1780 (cleaned up). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* "For this reason, specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.*" Id.* The relevant forum contacts are those that occurred at the time of the wrongful acts that are the subject of the suit. *Steel v. United States*, 813 F.2d 1545, 1549 (9th Cir. 1987) ("As a matter of due process, the determination of amenability to suit takes place at the time of the relevant contacts. . . . [O]ne cannot defeat personal jurisdiction by a move away from the state in which the underlying events took place.").

The Ninth Circuit analyzes specific jurisdiction under a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211. "The plaintiff has the burden of proving the first two prongs." *Id.* at 1211–12. "If he does so, the burden shifts to the defendant to set forth a compelling case that the exercise of jurisdiction would not be reasonable." *Id.* at 1212 (cleaned up).

---

[33] Opp'n – ECF No. 16 at 12–17.

### 1.1    Prong One: Purposeful Availment and Purposeful Direction

The plaintiff may satisfy the first prong by "demonstrating that the defendant either purposefully availed itself of the privilege of conducting activities in the forum or purposefully directed its activities at the forum. *Washington Shoe Co. v. A–Z Sporting Goods, Inc.*, 704 F.3d 668, 672 (9th Cir. 2012), *abrogated on other grounds by Axiom Foods, Inc. v. Acerchem Int'l, Inc.*, 874 F.3d 1064 (9th Cir. 2017)); *accord Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) ("or by some combination thereof"). Although the Ninth Circuit has "sometimes used these two terms in shorthand fashion as a single concept, they are, in fact, two distinct concepts." *Washington Shoe Co.*, 704 F.3d at 672 (cleaned up).

With respect to prong one, courts apply a "purposeful availment" analysis in suits sounding in contract or involving business transactions and a "purposeful direction" analysis (also known as the "effects test") in suits sounding in tort. *Id.*; *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004). The claims here are tort claims. The plaintiff generally argues purposeful availment, and the defendants argue both purposeful availment and purposeful direction.[34] The defendants' conduct satisfies both tests.

#### 1.1.1    Purposeful Availment

"To have purposefully availed itself of the privilege of doing business in the forum, a defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008) (cleaned up). "A showing that a defendant purposefully availed himself of the privilege of doing business in a forum state typically consists of evidence of the defendant's actions in the forum, such as executing or performing a contract there." *Schwarzenegger*, 374 F.3d at 802; *cf. Picot*, 780 F.3d at 1212 (a contract alone does not automatically establish minimum contacts); *Long v. Authentic Athletix, LLC*, No. 16-cv-03129-JSC, 2016 WL 6024591, at *3 (N.D. Cal. Oct. 14, 2016) ("A contract is only an intermediate step that connects prior negotiations with future consequences, the real object of a business transaction"). For example, a defendant purposefully

---

[34] *Id.* at 13–15; Mot. – ECF No. 11-1 at 11–13; Reply – ECF No. 17 at 3–6.

avails itself of the privilege of doing business in the forum by opening offices and hiring employees in the forum." *Mewawalla v. Middleman*, No. 21-cv-09700-EMC, 2022 WL 1304474, at *9 (N.D. Cal. May 2, 2022).

In *Mewawalla*, the court held that an out-of-state defendant purposefully availed itself of California's protections and benefits by hiring the plaintiff because of his California connections and allowing him to be based in California. 2022 WL 1304474, at *9. Similarly, in *Stuart v. Churn LLC*, a New York employer purposefully availed itself of the North Carolina forum by employing the plaintiff in North Carolina, expecting the plaintiff to work out of his own space, and having the plaintiff advance the employer's business interests in the state. No. 1:19-CV-369, 2019 WL 2342354, at *5 (M.D.N.C. June 3, 2019); *see also Wood v. Kinetic Sys., Inc.*, No. CV 09-579-S-CWD, 2010 WL 893647, at *6 (D. Idaho Mar. 9, 2010) (an out-of-state employer purposefully availed itself of the privilege of conducting activities in Idaho by (1) hiring an Idaho resident with the understanding that he would use his home office in Idaho to work, (2) maintaining the relationship for six years, and (3) advertising its services to Idaho companies).

These cases support the conclusion that the defendants purposefully availed themselves of the privilege of doing business in the California forum: (1) they allowed the plaintiff and another employee to work for ABS in California, (2) they had a Los Angeles "Sales Support" office on the ABS website, and (3) they retaliated against the plaintiff while she worked in California.[35]

The plaintiff also alleges that Mr. Dhar discussed expanding ABS's operations into California and that she "made introductions to California based prospective customers for ABS' battery systems."[36] While the defendant ABS counters that "[n]o one on the business development team asked her to do" this, it acknowledges that its "Vice President of Business Development" had a

---

[35] Compl. – ECF No. 1 at 17 (¶¶ 64–65); ABS, "Serving Our Customers," Ex. A to McElhinny Decl. – ECF No. 16-1 at 2 (¶ 3), 5 (ABS's website's description of a Los Angeles "Sales Support" location in Los Angeles, California); Reply – ECF No. 17 at 4 (acknowledging a Los Angeles employee and the reference to a "Sale Support office" on its website); Warner Decl. – ECF No. 17-2 at 2 (¶ 4) (acknowledging that ABS employed a person in Los Angeles from April 26, 2021, to June 15, 2022).

[36] Franey Decl. – ECF No. 16-2 at 2 (¶ 5).

call with each potential client.[37] As to the defendants' argument that these activities were beyond the scope of the plaintiff's HR position, ABS allegedly announced and then retracted the plaintiff's promotion to a business-development role.[38] Also, given the plaintiff's allegation that she cultivated business opportunities for ABS here (a factor that supports purposeful availment), the fact disputes about the plaintiff's job responsibilities at ABS must be resolved in the plaintiff's favor. *Ranza*, 793 F.3d at 1068.

The defendants also contend that they are not subject to jurisdiction because ABS recently updated its website to remove references to the Los Angeles "Sales Support" location and no longer employs anyone in California.[39] They admit that ABS employed a person to provide customer support in Los Angeles from April 26, 2021, to June 15, 2022 (five days after the complaint was filed).[40] The recent updates to the website and termination of the employee postdate the acts at issue in the case and are not relevant to the jurisdictional analysis. *Steel*, 813 F.2d at 1549.

In sum, the defendants' forum contacts satisfy the purposeful-availment element.

### 1.1.2   Purposeful Direction

In tort cases, courts in the Ninth Circuit "typically inquire whether a defendant purposefully directed his activities at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Washington Shoe Co.*, 704 F.3d at 672–73 (cleaned up). Under the effects test, purposeful direction exists when a defendant commits an act outside the forum that was intended to and does in fact cause injury in the forum, meaning, the defendant must (1) commit an intentional act (2) expressly aimed at the forum (3) that causes harm that the defendant knows is likely to be suffered in the forum. *Calder v. Jones*, 465 U.S. 783, 788–89 (1984); *Washington Shoe Co*, 704 F.3d at 679.

The effects test focuses on "the forum in which the defendant's acts were felt, whether or not the actions themselves occurred within the forum." *Mavrix*, 647 F.3d at 1228. "However, referring

---

[37] Menjak Decl. – ECF No. 17-1 at 2 (¶¶ 4–5).

[38] Reply – ECF No. 17 at 5; Compl. – ECF No. 1 at 16–17 (¶¶ 61–64).

[39] Reply – ECF No. 17 at 4

[40] *Id.*; Warner Decl. – ECF No. 17-1 at 2 (¶ 4).

1    to the *Calder* test as an effects test can be misleading. For this reason, we have warned courts not to

2    focus too narrowly on the test's third prong — the effects prong — holding that something more is

3    needed in addition to a mere foreseeable effect." *Pebble Beach*, 453 F.3d at 1156 (cleaned up).

4         Courts apply the purposeful-direction test to torts, including workplace-harassment, gender-

5    discrimination, and retaliation claims, fraud, and infringement of the right of publicity.

6    *Schwarzenegger*, 374 F.3d at 802 (9th Cir. 2004) (right of publicity); *RHUB Commc'ns, Inc. v.*

7    *Karon*, 16-cv-06669-BLF, 2017 WL 3382339, at *5 (N.D. Cal. Aug. 7, 2017) (fraud); *Mewawalla*,

8    2022 WL 1304474, at *6 (wrongful retaliation under California Labor Code section 1102.5 and

9    intentional and negligent interference with economic relations; "[t]hough not a tort per se, courts

10   have employed the 'purposeful direction' test when analyzing whether a defendant accused of

11   violating a California labor code purposefully availed itself of California's protections and

12   benefits"); *Krantz v. Bloomberg L.P.*, No. 2:21-cv-06275-AB (RAOx), 2021 WL 8820655, at *4

13   (C.D. Cal. Dec. 1, 2021) (gender discrimination in violation of the FEHA); *Alexis v. Rogers*, No.

14   15cv691-CAB-BLM, 2016 WL 11707630, at *4 (S.D. Cal. Feb. 26, 2016) (claims of sexual

15   harassment, assault, and wrongful termination); *Mercado v. JMJ Assocs. LLC*, No. SACV 14-

16   2060-JLS (RNBx), 2015 WL 13783452, at *3 (C.D. Cal. Apr. 15, 2015) (race discrimination in

17   employment). Some courts have analyzed wage-and-hour claims under both the purposeful-

18   direction and purposeful-availment approaches on the basis that such claims "assume[] the

19   existence of an employment contract." *Senne v. Kansas City Royals Baseball Corp.*, 105 F. Supp.

20   3d 981, 1022–23 (N.D. Cal. 2015). "[I]n the wage and hour context, the express aiming

21   requirement is met where an out-of-state defendant targets the forum by operating businesses there

22   and applying the challenged policy to individuals hired to work at those businesses." *Id.* at 1028.

23        "The exact form of our [express aiming] analysis varies from case to case and depends, to a

24   significant degree, on the specific type of tort or other wrongful conduct at issue." *Picot*, 780 F.3d

25   1214 (cleaned up).

26        First, in the employment discrimination context, "hiring, employment, alleged discrimination,

27   and termination are intentional acts." *Mercado*, 2015 WL 13783452, at *3.

28

United States District Court
Northern District of California

Second, the allegations establish the express-aiming element: the defendants allegedly (1) allowed the plaintiff to work from California, (2) delayed and then retracted the plaintiff's promotion to a business-development position, and (3) retaliated against the plaintiff while she was in California, purportedly based on her refusal to engage in a sexual relationship with Mr. Dhar.[41] *Mercado*, 2015 WL 13783452, at *4 (the "acts of hiring, employing, discriminating against, and terminating" an employee who performed a substantial amount of work in California were "clearly expressly aimed at California"); *Mewawalla*, 2022 WL 1304474, at *6 ("Actions that may demonstrate targeting the forum state include '[t]he solicitation of business in the forum state that results in business being transacted or contract negotiations.'") (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)).

The defendants cite *Senne* for the proposition that the plaintiff's claims have nothing to do with ABS's activities or intentional conduct in California and thus, under prong two of the jurisdictional test, the claims do not arise out of or relate to the defendant's forum-related activity.[42] Because the argument is also relevant to the "express aiming" element of the *Calder* test, *see Senne*, 105 F. Supp. 3d at 1025–26, the court addresses the issue here and concludes that (1) the defendants expressly aimed tortious acts at the forum (as required by *Calder*) and (2) the plaintiff has satisfied prong two of the overall jurisdictional test, which provides that the claims must arise out of or relate to the defendants' forum-related activities.

The issue here is that if a defendant's only contact with the forum is its knowledge of the plaintiff's unilateral actions (the plaintiff's choice to reside in the forum, for example), then there are not sufficient contacts with the forum to support specific personal jurisdiction consistent with the requirements of due process. *Id.* at 1028 (using this example and analyzing *Walden v. Fiore*, 571 U.S. 277 (2013)). The issue is relevant to the express-aiming requirement, which requires conduct aimed at the forum, and the prong-two requirement of forum-related activities. *Id.* at 1028, 1040–41.

---

[41] Compl. – ECF No. 1 at 2, 14–17 (¶¶ 2, 54, 58, 61, 64–65); Franey Decl. – ECF No. 16-2 at 2 (¶ 4).

[42] Mot. – ECF No. 11-1 at 13 (citing *Senne*, 105 F. Supp. 3d at 1040–41).

1    In *Walden*, the plaintiffs — professional gamblers with a large amount of cash who were

2    transiting through Atlanta, Georgia, to Las Vegas, Nevada — had their money seized at the Atlanta

3    airport. 571 U.S. at 279–81. A Georgia-based law-enforcement officer submitted a complaint to the

4    U.S. Attorney's Office in the Northern District of Georgia for the seizure of the funds. *Id.* at 280–

5    81. The accompanying affidavit omitted exculpatory information, and ultimately the money was

6    returned. *Id.* at 281. The plaintiffs sued the Georgia officer in Nevada for a Fourth Amendment

7    violation. *Id.* The Ninth Circuit held that the Nevada court had jurisdiction. *Id.* The Supreme Court

8    reversed because the officer's conduct had nothing to do with Nevada, and his knowledge of the

9    plaintiff's contacts with the forum were not enough. *Id.* at 288–89. But as the *Senne* court held,

10   *Walden* does not preclude specific jurisdiction when the defendant's intentional conduct creates the

11   necessary contacts with the forum. *Senne*, 105 F. Supp. 3d at 1028.

12   *Senne* was a wage-and-hour case where out-of-state baseball franchises challenged specific

13   personal jurisdiction. The court held that the express-aiming requirement is met when an out-of-

14   state defendant targets the forum by operating businesses there and applying the challenged

15   employment policy to persons hired to work at those businesses. *Id.* at 1028–29 (collecting cases).

16   Also, "where a defendant conducts extensive and ongoing scouting and recruiting in the forum and

17   hires residents of the forum on a regular and continuous basis, the application of a wage policy that

18   is alleged to be in violation of the FLSA and state wage and hour laws to work that is required

19   under the contract and is performed in California is a contact that is not 'random' or 'fortuitous,'

20   even if the defendant does not expressly require employees to perform the work in California." *Id.*

21   at 1029. These contacts also satisfy the prong-two requirement, which asks whether a claim "arises

22   out of or relates to" the defendants' contact with the forum. *Id.* at 1040–41 (collecting cases).

23   In concluding that the contacts were expressly aimed at the forum, the *Senne* court held that

24   the contacts were not like those in *Walden*, where the officer's only contact was his knowledge of

25   the plaintiff's connection to the forum. *Id.* at 1028. Operating a business in the forum and applying

26   a challenged policy to workers in the forum is not, for example, akin to a plaintiff's unilateral

27   choice to reside in the forum. *Id.* at 1028–29. It similarly distinguished *Walden* in its analysis of

28   whether the claims arose from or related to the defendants' forum contacts. *Id.* at 1040–41.

United States District Court
Northern District of California

Applying these principles, the *Senne* court held that several baseball franchises were subject to jurisdiction in California. For example, the Detroit Tigers franchise was subject to jurisdiction based, in part, on its employment of several persons based in California and its recruitment in California of a player who "returned to California during the offseason months" and performed "winter work" for the franchise. *Id.* at 1034–35, 1045.

Like the defendants in *Senne,* the defendants' forum contacts here are more than their knowledge of the plaintiff's unilateral actions: they allowed the plaintiff to work from California, delayed and retracted her promotion, and retaliated against her while she was in California. Their other forum-related activities include supporting the plaintiff's employment in California by providing office supplies, paying travel expenses, and paying for health insurance. They followed up on the California business introductions that she provided. They had another California-based employee and advertised a Los Angeles "Sales Support" office on ABS's website.[43]

The defendants contend that there is no personal jurisdiction because they did not require the plaintiff to work in California.[44] The factor is not dispositive: jurisdiction may exist in California for an employment action "even if the defendant does not expressly require employees to perform the work in California." *Id.* at 1029.

Third, the allegations establish that the defendants knew that the plaintiff would suffer harm in California. When an employer knows its employee is performing work in the forum, typically this requirement is satisfied. *Id.* at 1025–26. And again, unlike the defendant in *Walden*, the defendants knew that the plaintiff would suffer harm in California based on their own conduct directed to the forum, not merely based on their knowledge of the plaintiff's connections with the forum.

In sum, the defendants' forum contacts satisfy the purposeful-direction element.

---

[43] Compl. – ECF No. 1 at 14 (¶ 54), 17 (¶¶ 64–65); ABS, "Serving Our Customers," Ex. A to McElhinny Decl. – ECF No. 16-1 at 2 (¶ 3), 5 (ABS's website's description of a Los Angeles "Sales Support" location in Los Angeles, California); Reply – ECF No. 17 at 4 (acknowledging a Los Angeles employee and the reference to a "Sale Support office" on its website); Warner Decl. – ECF No. 17-2 at 2 (¶ 4) (acknowledging that ABS employed a person in Los Angeles from April 26, 2021, to June 15, 2022); Franey Decl. – ECF No. 16-2 at 2 (¶ 4); Menjak Decl. – ECF No. 17-1 at 2 (¶¶ 4–5).

[44] Reply – ECF No. 17 at 4 ("ABS never required either of [its California employees] to work in California.").

1

### 1.2    Prong 2: Forum-Related Activities

The next issue is whether the plaintiff's claims arise out of or are related to the defendants' contacts with the forum. *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1026 (2021); *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 983 (9th Cir. 2022). "In other words, there must be an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb*, 137 S. Ct. at 1780.

Ninth Circuit precedents before *Ford* required a showing of but-for causation. *Ayla*, 11 F.4th at 983 n.5 (collecting cases). *Ford* now forecloses the exclusive use of that narrower test. *Id.* In *Ford*, "the Supreme Court emphasized that a strict causal relationship is not required." *Id.* (citing *Ford*, 141 S. Ct. at 1026). "None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do." *Ford*, 141 S. Ct. at 1026. Thus, the earlier precedents now "permit but do not require a showing of but-for causation to satisfy the nexus requirement." *Ayla*, 11 F.4th at 983 n.5 (collecting cases).

For the reasons discussed in the previous section, the defendants' forum contacts satisfy this element. The plaintiff's claims against the defendants are about sexual harassment and retaliation during her employment, including more than two years of employment in California.[45] The defendants' contacts with California resulted from the employment relationship, and the plaintiff's claims arise out of the relationship. *Alexis*, 2016 WL 11707630, at *10 (the plaintiff's claims arose out of the defendants' forum-related activities because the defendants' contacts with the forum "were the result of the employment relationship between Plaintiff and Defendants, and Plaintiff's [sexual-harassment] claims arise from that relationship").

### 1.3    Prong 3: Reasonableness of the Exercise of Jurisdiction

Because the plaintiff established the first two prongs, the burden shifts to the defendants to establish "a compelling case that the exercise of jurisdiction would not be reasonable." *Picot*, 780 F.3d at 1211–12. To determine whether the exercise of jurisdiction is reasonable, the Ninth Circuit

United States District Court
Northern District of California

---

[45] Compl. – ECF No. 1 at 2 (¶¶ 1–3), 14 (¶ 54), 17 (¶ 65).

has identified seven factors: "(1) The extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendants' state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 561 (9th Cir. 1995) (cleaned up). The factors should be balanced against each other, and no single factor is dispositive. *Id.*

Because the defendants have purposefully availed themselves of California by employing two employees in the state and pursuing business in California, the first factor weighs in favor of the plaintiff. The second factor (litigating in California) is more burdensome for defendants than litigating in Michigan, but the availability of technology permitting remote depositions militates against affording this factor substantial weight. The third factor is neutral as there does not appear to be any conflict with the defendants' state.

The fourth factor favors the plaintiff because she resides in California and the injury — at least in part —occurred here. Thus, California has a strong interest in adjudicating the dispute. *Enriquez v. Interstate Grp., LLC*, No. 11-CV-05155 YGR, 2012 WL 3800801, at *7 (N.D. Cal. Aug. 31, 2012) ("California has a strong interest in adjudicating this matter because the injuries alleged occurred here in California and Plaintiffs are residents of California.").

The fifth and sixth factors favor the plaintiff. Regarding judicial efficiency, the case now appears to be "in a posture where the parties will soon be able to proceed to the merits." *Senne*, 105 F. Supp. 3d at 1045 (the interest of judicial efficiency favored allowing the plaintiffs to proceed against out-of-state defendants where the case was at an early stage but ready to proceed to the merits). The plaintiff's interests in convenience favor the California forum because the plaintiff resides in California. *Id.* Concerning the seventh factor, because the defendants could be sued in Michigan, this factor favors the defendants. *Id.*

On balance, the exercise of specific jurisdiction over ABS and Mr. Dhar in California is reasonable because most factors are neutral or support the plaintiff.

United States District Court
Northern District of California

1     **2.  Venue**

2         The plaintiff's Title VII claim is subject to a mandatory venue provision. *See Johnson v. Payless*

3     *Drug Stores Nw., Inc.*, 950 F.2d 586, 587–88 (9th Cir. 1991). The provision provides that

4         [s]uch an action may be brought in any judicial district in the State in which the
      unlawful employment practice is alleged to have been committed, in the judicial
5         district in which the employment records relevant to such practice are maintained
      and administered, or in the judicial district in which the aggrieved person would
6         have worked but for the alleged unlawful employment practice, but if the
      respondent is not found within any such district, such an action may be brought
7         within the judicial district in which the respondent has his principal office.

8

9     42 U.S.C. § 2000e-5(f)(3). "In general, the effect of Title VII's venue provision is to allow suit in

10    the judicial district in which the plaintiff worked or would have worked." *Passantino v. Johnson &*

11    *Johnson Consumer Prod., Inc.*, 212 F.3d 493, 504–05 (9th Cir. 2000).

12        Courts in this district have held that "when a plaintiff brings a Title VII action, which is covered

13    by Title VII's restrictive venue provision, as well as an action governed by the general venue

14    provision, the narrower venue provision of § 2000e–5(f)(3) controls." *Enoh v. Hewlett Packard*

15    *Enter. Co.*, No. 17-cv-04212-BLF, 2018 WL 3377547, at *7 (N.D. Cal. July 11, 2018) (cleaned up).

16    If venue is improper, the court must "dismiss, or if it be in the interest of justice, transfer such case

17    to any district or division in which it could have been brought." 28 U.S.C. § 1406(a).

18        It is undisputed that the plaintiff worked in San Francisco, California for ABS since April

19    2020.[46] The fact that the plaintiff worked out of her home office, as opposed to the defendants'

20    office, is of no consequence to the Title VII venue analysis. The plaintiff in *Passantino* worked out

21    of a home office, and the Ninth Circuit called fears that plaintiffs would forum shop by relocating

22    their home offices "fanciful." 212 F.3d at 500. Furthermore, there is no evidence that this was a

23    temporary working location. *Cf. Mayberry v. Int'l Bus. Machines Corp.*, No. CV09-1369 CW, 2009

24    WL 1814436, at *3 (N.D. Cal. June 25, 2009) (holding that "[a]n employee's home district, where

25    the employee worked before a temporary overseas assignment, where the employee reasonably

26

27

28    ───────────
      [46] *Id.* at 14 (¶ 54); Mot. – ECF No. 11-1 at 8; Franey Decl. – ECF No. 16-2 at 2 (¶ 4).

expected to continue working for the employer after the temporary assignment . . . must be regarded as a district where the effects of adverse employment actions made overseas are felt.").

Finally, the defendants' reliance on *Davidson v. Korman*, is not persuasive.[47] No. C 09-1695 SBA, 2010 WL 3515760, (N.D. Cal. Sept. 8, 2010), *aff'd*, 532 F. App'x 720 (9th Cir. 2013). There, the plaintiff argued that venue was appropriate in the Northern District of California because, among other things, the plaintiff lived in San Francisco, the defendant sent her a hire letter there, and she sometimes worked from San Francisco. *Id.* at *3. The court held that venue for the plaintiff's Title VII claims was not proper in the Northern District even though the plaintiff lived in the district and had occasional interactions with the district in connection with her job. *Id.* at *3. Instead, venue was proper "in the Eastern District of California, where Plaintiff worked prior to her termination." *Id.* The facts here are different: the plaintiff was not occasionally working from her home in San Francisco and instead worked in San Francisco permanently since April 2020.[48]

Thus, venue for the plaintiff's Title VII claim is appropriate in this district because that is where the defendant worked until her termination.

### 3.  28 U.S.C. § 1404

The parties do not dispute that venue is in the Eastern District of Michigan.[49] ABS is based there.[50] 42 U.S.C. § 2000e-5(f)(3) (venue is proper where the "employment practice is alleged to have been committed, [and] in the judicial district in which the employment records relevant to such practice are maintained and administered"); 28 U.S.C. § 1404(a) (allowing transfer if venue is proper in the transferee district); *Hunt v. Ameritas Life Ins. Corps.*, No. 4:19-CV-01657-JSW, 2019 WL 7666755, at *2 (N.D. Cal. Sept. 25, 2019) (same).

The defendants then must show that transfer is appropriate under § 1404(a). *Commodity Futures Trading*, 611 F.2d at 278–79. The court nonetheless has broad discretion to decide

---

[47] Mot. – ECF No. 11-1 at 15.

[48] *Id.* at 8; Compl. – ECF No. 1 at 14 (¶ 54); Franey Decl. – ECF No. 16-2 at 2 (¶ 4).

[49] Opp'n – ECF No. 16 at 21–22.

[50] Mot. – ECF No. 11-1 at 16; Opp'n – ECF No. 16 at 17; Compl. – ECF No. 1 at 2–3 (¶ 5).

transfer motions based on an "individualized, case-by-case consideration of convenience and fairness." *Stewart Org.*, 487 U.S. at 29; *Jones*, 211 F.3d at 498. Factors that the court may consider include "(1) [the] plaintiffs' choice of forum, (2) convenience of the parties, (3) convenience of the witnesses, (4) ease of access to the evidence, (5) familiarity of each forum with the applicable law, (6) feasibility of consolidation with other claims, (7) any local interest in the controversy, and (8) the relative court congestion and time to trial in each forum." *Lapachet v. Cal. Forensic Med. Grp., Inc.*, No. 16-CV-06959-HSG, 2017 WL 3917209, at *2 (N.D. Cal. Sept. 7, 2017) (collecting cases); *see Jones*, 211 F.3d at 498–99 (identifying factors).

This list of factors is not exhaustive. *Lapachet*, 2017 WL 3917209, at *2. And some factors have more weight or less depending on the context. *Id.* In general, the first four factors are private-interest factors, and the last four are public-interest factors. *See Bloom v. Express Servs. Inc.*, No. C 11-00009 CRB, 2011 WL 1481402, at *2–6 (N.D. Cal. Apr. 19, 2011).

If there is a valid forum-selection clause, then only the public-interest factors are relevant to the transfer analysis. *Atl. Marine Const.*, 571 U.S. at 64. Therefore, before addressing the § 1404(a) transfer factors, the court first determines whether there is a valid forum-selection clause.

### 3.1   Forum-Selection Clause

"[T]he appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." *Atl. Marine Const.*, 571 U.S. at 60. In this regard, "Section 1404(a) is merely a codification of the doctrine of *forum non conveniens* for the subset of cases in which the transferee forum is within the federal court system[.]" *Id.* When there is an enforceable forum-selection clause, the court may consider only the public-interest factors relevant to the *forum non conveniens* analysis and not the private-interest factors. *Id.* at 63–64 (the usual *forum non conveniens* "calculus changes . . . when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum,'" and "a district court may consider arguments about public-interest factors only").

The threshold issue is whether "there is an enforceable forum-selection agreement between the parties." *Halcyon*, 2020 WL 4051865, at *20 n.10. In *Halcyon*, the court held that there was insufficient evidence "to modify the usual standards governing *forum non conveniens* motions"

1

2

because the only forum-selection clause cited by the defendant was "contained in [an agreement], which was sent to [the plaintiff by the defendant] but was never signed by [the plaintiff]." *Id.*

3

4

5

6

7

8

9

10

11

12

13

Evaluating forum-selection clauses involves both state and federal law. Federal law governs the interpretation and enforcement of forum-selection clauses in diversity cases. *Manetti-Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir. 1988). State law governs contract formation. *See Lowden v. T-Mobile USA, Inc.*, 512 F.3d 1213, 1217 (9th Cir. 2008) ("We apply state-law principles that govern the formation of contracts to determine whether a valid arbitration agreement exists.). That means that state law governs the validity of a forum-selection clause, just like any other contract clause. *DePuy Synthes Sales, Inc. v. Howmedica Osteonics Corp.*, 28 F.4th 956, 963–64 & n.6 (9th Cir. 2022) (a California state law, California Labor Code § 925, "which grants employees the option to void a forum-selection clause under a limited set of circumstances, determines the threshold question of whether [the employee's] contract contains a valid forum-selection clause" declined to decide whether state law always governs the validity of forum-selection clauses).

14

15

16

17

18

19

20

21

22

23

The unsigned agreement here has a choice-of-law provision designating Michigan law as the governing law, and it has a date line (month and day blank, year 2019) showing it was drafted while the plaintiff was working at ABS in Michigan.[51] Michigan law applies to determining whether a contract was formed. *Skillnet Sols., Inc. v. Ent. Publications, LLC*, No. C 11-4865 PSG, 2012 WL 692412, at *5 (N.D. Cal. Mar. 2, 2012) (applying Michigan law to interpret a contract containing a forum-selection clause on a motion to dismiss for improper venue); *see also DePuy Synthes Sales*, 28 F.4th at 964 (neither *Atlantic Marine* nor "any other Supreme Court decision creates a federal rule of contract law that preempts a state law like [California Labor Code § 925] from addressing the upstream question of whether the contract sought to be enforced includes a viable forum-selection clause.").

24

25

26

The defendants contend that the plaintiff's employment agreement required her to litigate claims against the defendants in Michigan.[52] The plaintiff counters that she (1) never signed the agreement,

27

28

---

[51] Mot. – ECF No. 11-1 at 19; Emp. Agreement, Ex. A to Keller Decl. – ECF No. 11-2 at 14–15.

[52] Mot. ECF No. 11-1 at 19–21; Reply – ECF No. 17 at 6–7.

1    (2) was provided with the agreement months after starting at ABS, and (3) was never given a new

2    agreement when she was "demoted" to the Director of HR in January 2020. (The original agreement

3    referenced her initial position of "Chief of Staff" to Mr. Dhar.)[53]

4        The fact that the plaintiff did not sign the agreement weighs against enforcing it against her. *Cf.*

5    *Eventbrite, Inc. v. Loranger*, No. 19-cv-04083-RS, 2019 WL 11499335, at *4 (N.D. Cal. Nov. 19,

6    2019) ("By executing the guaranty containing the forum-selection clause, [the defendant] consented

7    to both personal jurisdiction and venue in this forum."). But under Michigan law, an offer may be

8    accepted through continued employment. *Tillman v. Macy's, Inc.*, 735 F.3d 453, 460 (6th Cir. 2013)

9    (the plaintiff accepted an arbitration agreement by "continuing her employment"). Nonetheless, the

10   fact that the plaintiff did not sign the agreement is not the only problem.

11       The second problem is that the agreement containing the clause purportedly governed the

12   plaintiff's employment as "Chief of Staff" but did not expressly govern her employment as the

13   "Director of HR."[54] The defendants point out that the plaintiff referenced having an employment

14   contract in email correspondence with the defendants.[55] The correspondence suggests that the

15   plaintiff believed she had a written employment contract. But the correspondence does not establish

16   that the plaintiff necessarily admitted that the contract containing the forum-selection clause

17   governed her employment at ABS as both "Chief of Staff" and "Director of HR."

18       Based on these facts, the record does not establish that both parties agreed to restrict the forum

19   for any dispute to Michigan. *See Skillnet Sols.*, 2012 WL 692412, at *5 (a "boilerplate venue clause

20   in the unsigned [purchase orders] does not demonstrate a clear intent of both parties to limit venue

21   in the event of a dispute" but holding that transfer was appropriate because a contract that was

22   "negotiated at arms-length and signed by both parties" incorporated the venue clause). The court

23   "must draw all reasonable inferences in favor of the non-moving party and resolve all factual

24   conflicts in favor of the non-moving party." *Halcyon Syndicate*, 2020 WL 4051865, at *19. The

25

---

26   [53] Opp'n – ECF No. 16 at 19–21; Franey Decl. – ECF No. 16-2 at 2 (¶¶ 2–3); Emp. Agreement, Ex. A
     to Keller Decl. – ECF No. 11-2 at 16.

27   [54] Emp. Agreement, Ex. A to Keller Decl. – ECF No. 11-2 at 16.

28   [55] Reply – ECF No. 17 at 6; Email Correspondence, Ex. B to Keller Decl. – ECF No. 11-2 at 18.

United States District Court
Northern District of California

forum-selection clause is not enforceable on this record, and both the private- and public-interest factors apply to the defendants' motion to transfer under Section 1404(a).

### 3.2   Private and Public Interest Factors

#### 3.2.1   The Plaintiff's Choice of Forum and the Place of the Operative Facts

Generally, the court affords the plaintiff's choice of forum great weight. *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987). But when judging the weight to be given to the plaintiff's choice of forum, consideration must be given to the respective parties' contact with the chosen forum. *Id.* "If the operative facts have not occurred within the forum and the forum has no interest in the parties or subject matter," the plaintiff's choice "is entitled only minimal consideration." *Id.*

The plaintiff was employed in the district for more than two years. While some of the alleged harassment occurred in Michigan before the plaintiff moved to San Francisco, much of the retaliation happened to the plaintiff while she was living and working in California. Thus, the plaintiff's choice of forum is entitled to substantial weight.

#### 3.2.2   The Convenience of Witnesses and Parties and Access to Evidence

The location of witnesses slightly favors transfer. The plaintiff is in California, but Mr. Dhar and other ABS witnesses are in Michigan. Accordingly, it appears that most witnesses are in Michigan. Nonetheless, the capacity to conduct depositions by Zoom and the fact that most documents are likely to be stored electronically militates against affording this factor substantial weight. *Bloom*, 2011 WL 1481402, at *4 ("Given technological advances in document storage and retrieval, transporting documents between districts does not generally create a burden.") (cleaned up).

#### 3.2.3   Familiarity of Each Forum with Applicable Law

The plaintiff's suit is based in part on federal law. Federal courts are equally able to apply federal law. *Shields v. Amerigas Propane, Inc.*, No. 2:15-cv-00754-KJM, 2015 WL 5436772, at *3 (E.D. Cal. Sept. 15, 2015); *U.S. ex rel. Frazier v. IASIS Healthcare Corp.*, 812 F. Supp. 2d 1008, 1014 (D. Ariz. June 1, 2011) (same). The remaining claims are three claims based on California law and two based on Michigan law. [56] Courts in California are more familiar with California law

---

[56] Compl. – ECF No. 1 at 17–23 (¶¶ 67–113).

United States District Court
Northern District of California

than courts in other states. *Getz v. Boeing Co.*, 547 F. Supp. 2d 1080, 1085 (N.D. Cal. 2008) ("A court in the Northern District of California is more familiar with California law than a court in the District of Arizona."). This factor weighs against transfer.

### 3.2.4   Local Interest

Because the plaintiff lived and worked in this district, the local-interest factor generally weighs against transfer. *Schott v. Ivy Asset Mgmt. Corp.*, No. 10-CV-01562-LHK, 2010 WL 4117467, at *10 (N.D. Cal. Oct. 19, 2010) ("Any alleged harm occurred in California where Plaintiff resides. This Court has an interest in protecting its citizens from harm."). But a state also has "an interest in deciding controversies involving businesses headquartered [in the state], and that employ a substantial number of its citizens." *Bloom*, 2011 WL 1481402, at *5. This factor is neutral.

### 3.2.5   Other Factors

The feasibility-of-consolidation-with-other-claims factor does not appear to have any relevance because there do not appear to be any related cases in this district or the Eastern District of Michigan.

Concerning court-congestion, the defendants cite evidence showing that the time to trial is shorter in the Eastern District of Michigan than it is in this district.[57] The plaintiff counters by arguing that the defendants' evidence is outdated.[58]

The relative congestion of the courts in each district is not especially important. *Royal Queentex Enters. v. Sara Lee Corp.,* No. C-99-4787 MJJ, 2000 WL 246599, at *8 (N.D. Cal. Mar. 1, 2000) ("Relative court congestion is at best, a minor factor in the section 1404 calculus."); *see also Chesapeake Climate Action Network v. Exp.-Imp. Bank of the United States*, No. C 13-03532 WHA, 2013 WL 6057824, at *3 (N.D. Cal. Nov. 15, 2013) (declining to weigh congestion as a factor considering conflicting evidence on the relative congestion of the transferor and transferee courts).

In the twelve-month period ending June 30, 2022, the average time from filing to disposition in the Eastern District of Michigan for civil cases is 9.5 months and 10.1 months in the Northern District of California. U.S. Cts., Fed. Ct. Mgmt. Stat. – Profiles (June 2022),

---

[57] Mot. – ECF No. 11-1 at 24.

[58] Opp'n – ECF No. 16 at 21–22.

1    https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf. Furthermore, the

2    average time from filing to trial in the Eastern District of Michigan for civil cases is 46.8 months

3    and 34.7 months in the Northern District of California. *Id.* On these metrics, the relative level of

4    congestion in the two districts is roughly equal.

5        But the time to disposition in the district is not the only metric relevant to evaluating court

6    congestion under § 1404(a). *Arete Power, Inc. v. Beacon Power Corp.*, No. C 07-5167 WDB, 2008

7    WL 508477, at *12 (N.D. Cal. Feb. 22, 2008) (while cases may be disposed of more quickly in the

8    Northern District of California than in Massachusetts, each Northern District judge has more

9    pending cases and this may support an inference that litigants in Massachusetts "have access to

10    more judicial resources and prompter judicial attention (on a per case basis)"). In the twelve-month

11    period ending June 30, 2022, there were 699 weighted filings per judgeship in the Northern District

12    of California and 260 in the Eastern District of Michigan. U.S. Cts., Fed. Ct. Mgmt. Stat. – Profiles

13    (June 2022), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile0630.2022_0.pdf.

14    Accordingly, this minor factor slightly favors transfer.

15        In sum, the only factors that even slightly favor transfer are court congestion and the location

16    of some witnesses and parties. On balance, the relevant considerations weigh against transferring

17    this action to the Eastern District of Michigan under § 1404(a).

18

19                    **CONCLUSION**

20        The court denies the plaintiff's motion to dismiss for lack of personal jurisdiction and

21    improper venue. The court also denies the motion to transfer the case to the Eastern District of

22    Michigan under § 1404(a). This disposes of ECF No. 11.

23    **IT IS SO ORDERED.**

24    Dated: September 15, 2022

25    _____

26    LAUREL BEELER
       United States Magistrate Judge

27

28

United States District Court
Northern District of California